HAVERMEYERS & ELDER SUGAR REFINING CO. *v.* COMPANIA
TRANSATLANTICA ESPANOLA.

*(District Court, S. D. New York.* March 28, 1890.)

ADMIRALTY—INTERROGATORIES—PRODUCTION OF LETTERS.

>   Under rule 23 in admiralty, interrogatories annexed to the libel are confined to is-
> suable matter, and only the defendant's oath is required in response thereto.   In-
> spection or copies of letters or documents not in issue cannot be obtained by that
> means.   *Held,* therefore, in a libel for damage to cargo, that interrogatories call-
> ing for the production of letters between the defendants and their agents for the
> purpose of proving the fact of damage, and how it occurred, should be stricken
> · out.

*(Syllabus by the Court.)*

In Admiralty.   Exceptions to interrogatories.
*Butler, Stillman & Hubbard* and *Mr. Mynderse,* for libelant.
*Wing, Shoudy & Putnam,* for respondent.

BROWN, J.   The libelant propounded interrogatories in the libel un-
der rule 23, calling for the production of any letters, cablegrams, or cor-
respondence between the respondents and their agents, or the master,
relating to the damage to cargo, which forms the subject-matter of litiga-
tion.   To these interrogatories the respondent objects as unauthorized.
Rule 23 of the supreme court, in admiralty, provides that the libelant
may require the defendant to answer all interrogatories "touching all and
singular the allegations in the libel."   The interrogatories must be con-
fined, therefore, to the allegations of the libel; that is, to those matters
or particulars that go to make up the item of damage, or that constitute
alleged defects, or the particular acts of negligence, or specifications of
negligence, that might properly be averred in the libel, and are covered
by it in at least general terms.   Contracts, bills of lading, or other doc-
uments, when directly forming the subject-matter in litigation, may be
the subject of interrogatories, and perhaps be required to be produced.
But letters passing between the defendants and their agents do not stand
in any such relation to the subject-matter of this suit.   If the fact that
certain information was communicated to the defendants was material,
that might authorize inquiry as to letters containing such information.
But that is not the present case.   No averment as respects such letters,
or any information they contain, could here be properly pleaded.   The
libelant has the right to interrogate the defendant as to each and every
material fact in issue; but the rule requires the defendant's oath, and his
oath only, in response thereto.   It does not require him to produce doc-
uments, much of which would be hearsay, as mere evidence in the libel-
ant's favor, or as a substitute for his own oath as regards the material
facts in issue.   Ben. Adm. 670, form 220.   That is not, I think, within
·the intent of the rule.   The inspection of documents is a different mat-
ter, and is obtained, when allowed, by a different procedure, or under
different rules.   The English practice, which provides for the produc-
tion of documents in actions at law, equity, or in admiralty, is founded

upon express statutory provisions and definite rules of court.   See Judicature Act, order 31, and various rules under it; *Bustros* v. *White*, 1 Q. B. Div. 423; *English* v. *Tottie*, Id. 141; Williams & B. Adm. Pr. 406; *The Don Francisco*, 1 Lush. 474; *The Emma*, 3 Asp. (N. S.) 218.   We have no such statute applicable to proceedings in admiralty.   Section 724 of the United States Revised Statutes relates to suits at law only; and, considering that the answers made to interrogatories are not evidence for the party making them, (*Cushing* v. *Laird*, 6 Ben. 410; *Cushman* v. *Ryan*, 1 Story, 91; *Hutson* v. *Jordan*, 1 Ware, 389, 400; *The L. B. Goldsmith*, 1 Newb. Adm. 123; *The Serapis*, 37 Fed. Rep. 442,) I do not think the rule should be extended beyond its plain intention.   The interrogatories as respects the letters, etc., must therefore be disallowed.

NOTE.   Since the foregoing was written, I am informed of a similar decision made by Judge BENEDICT in the eastern district in April, 1885, in the case of *The Joseph Farwell*, which was also a suit for damage to cargo.   No opinion was filed.   The following is extracted from Mr. Mosher's brief in opposition to the interrogatories propounded:

"Perhaps the clearest and fullest exposition of the origin and object of these interrogatories is to be found in the learned note to *Hutson* v. *Jordan*, 1 Ware, 386, 395.   It is shown in the opinion in that case that, with the other general rules of practice in admiralty, these interrogatories come to us directly from the Roman law.   Id. 389.   In the civil law the practice of putting interrogatories was substituted for interrogatory actions after the latter fell into disuse.   Id. 398.   But interrogatories were and are subject to the same rules, and governed by the same principles, as were the interrogatory actions.   Id. 400. Now, it will be found by reference to the civilians quoted by the learned judge, that the interrogatory action, and the interrogatories which were substituted for it, were confined wholly to eliciting the oral answers of the adverse party, and could not be used to procure a discovery and copy of documents.   For the latter purpose, there was a distinct action *ad exhibendum*.   2 Huberus, Prælectiones, p. 415, lib. 10, tit. 4.   While the interrogatory action fell into disuse by the time of Justinian, the commentator says that Ulpian declares the *actio ad exhibendum* to be most necessary in practice, and that its value is proved by daily examples.   Id. 1.   This *actio ad exhibendum* is the origin of the bill to discover written instruments in chancery.   2 Story, Eq. Jur. § 1487.   (2) While, in the simple proceedings of the American admiralty, these distinctions of form may be disregarded, and discovery of written instruments be compelled, in a proper case, by interrogatories, the substantial rights of the parties must be preserved, and the one interrogated should not be compelled to exhibit his business books, accounts, and correspondence before the trial, to be digested by his adversary at leisure, except on grounds strong enough to uphold an action *ad exhibendum* or a bill of discovery.   Both the ancient action and the modern bill require that the actor or complainant shall show some especial right to the discovery sought beyond the ordinary interest of litigant to procure all attainable evidence in support of his case, and this special right must appear on the face of his pleadings.   2 Huberus, 415; 2 Story, Eq. Jur. §§ 1490, 1491.   But whoever heard of a bill in equity seeking, under the circumstances of this case, the discovery here asked?   If the libelants were the factors, trustees, or stewards of the claimants, and bound to account to them, more could not be demanded.   If they were charged with misappropriating the claimant's property, a fuller discovery could not be required than that they exhibit

all their correspondence, accounts, and book entries relating to the merchandise for which they sue. Such practice is repugnant to the spirit of our jurisprudence, which has always jealously guarded the private affairs of litigants from the unnecessary prying of their adversaries. No precedent can be found for it either in equity or admiralty."

---

THE J. F. CARD.

*(District Court, E. D. Michigan.  May 26, 1890.)*

ADMIRALTY—SEAMEN—LIABILITY OF SHIP TO SUPPORT AND CURE INJURED.
   The obligation of a vessel navigating the lakes to support and cure seamen taken sick or receiving injuries in the service of the ship does not extend beyond the termination of the seaman's contract, and his return to his home or to a marine hospital.

*(Syllabus by the Court.*

In Admiralty.

*Stewart O. Van der Marck,* for libelant.

*H. H. Swan,* for respondent.