## CURTIS v. UNITED STATES.
### No. 792.

District Court, D. Massachusetts.

May 1, 1939.

Bingham, Dana & Gould, of Boston, Mass., for plaintiff.

Edmund J. Brandon, U. S. Atty., and Robert W. Meserve, Asst. U. S. Atty., both of Boston, Mass.

McLELLAN, District Judge.

Annexed to the libel, which alleges a collision between the libellant's yacht and the respondent's steamship, is a set of interrogatories, to three of which (Nos. 5, 7 and 8) the respondent excepts. The libellant asks that the respondent be required to answer them.

The 5th interrogatory reads: "If your answer to the preceding interrogatory (which preceding interrogatory asks whether there was a collision) is in the affirmative, please state the point at which such collision occurred, giving either latitude and longitude or distance and bearing from some recognized landmark."

The respondent urges in substance that upon the issues presented by the pleadings it is not incumbent on the libellant to show where the collision occurred, and that interrogatories must be confined to evidence in support of the case of the side presenting them. See Prince Line, Ltd. v. Mayer & Lage, Inc., D.C., 264 F. 856; MacLeod & Co., Inc. v. United States, D.C., 295 F. 432. Assuming the rule of these cases requires an attempt carefully to differentiate between evidence in support of the interrogator's case and evidence to meet his adversary's case, and assuming without so deciding that such rule still subsists in admiralty (compare the cases above cited with The Henry S. Grove, D.C., 287 F. 247), reference may next be had to the pleadings.

The libel alleges that the libellant's schooner yacht "Lively Lady" "passed a short distance to seaward of red nun buoy

No. 2 which is on the outer edge of 'Three and One-half Fathom Ledge', so-called, and proceeded under sail alone close hauled on the starboard tack on a steady course of 43 degrees magnetic at a speed of between 2 and 2½ knots." The libel alleges also that the "Lively Lady", being the privileged vessel, held her course and speed. These allegations of the libel are denied in the Government's answer, which also alleges that the schooner "failed to hold her course and speed."

▮▮▮ I think the libel and the answer put in issue the place where the collision occurred and that the libellant's 5th interrogatory should be answered. The respondent's exception thereto is overruled and the respondent directed to answer this interrogatory.

In response to the 6th interrogatory, which asks whether the rough and smooth deck and engine room logs of the SS "City of Flint" for July 2, 1938, are now in existence, the respondent stated that the smooth deck and engine logs and the rough engine log book of the "City of Flint" covering the period of July 2, 1938, are now in existence, but that it is not presently advised as to the availability of the rough deck log. The 7th interrogatory asks, if the answer to the preceding interrogatory is in the affirmative, whether these logs will be produced at the trial of the cause. To this interrogatory the respondent excepts and its exception is sustained.

▮▮▮ The 8th interrogatory, to which the respondent excepts, reads: "8. If your answer to interrogatory No. 6 is in the affirmative, will you either annex full and complete copies of each of said logs for July 2, 1938, to your answers, or will you make said logs available for examination by proctors for libellant at some reasonably convenient time and place?" In spite of some decisions the other way (see The Forest T. Crosby, D.C., 34 F.2d 719; cf. The Favorita, D. C., 35 F.2d 352, and cases there cited), I think the respondent is not bound to make copies of the logs. Nor is the respondent required to state in answer to an interrogatory whether it will make papers available for examination by the libellant. The answer to the 6th interrogatory makes discovery of the existence of some of the logs here in question. It may be that as a convenient preliminary to an application under Admiralty Rule 32 for the production of documents in the respondent's possession or control no harm could come from requiring an answer to the latter portion of the 8th interrogatory. But in view of the adequacy of the Admiralty Rule providing that after joinder of issue, and before trial, any party may apply for an order for the discovery and production of material documents in the other party's possession, when the court has power to permit copies thereof to be made (Rule 32, 28 U.S.C.A. following section 723), the respondent's exception to Interrogatory No. 8 is sustained.

Respondent's Exceptions to Libellant's Answers to Interrogatories.

▮▮▮ The only exception to the libellant's answers to interrogatories now pressed by the respondent is the answer to respondent's 7th interrogatory, reading: "7. Please state if it is not a fact that the Lively Lady did not hold her course and speed but altered her course immediately prior to the collision." The libellant's answer thereto follows: "7. The Lively Lady held her course and speed until such time as a collision could not be avoided by any manoeuver on the part of the City of Flint at which time the schooner was luffed into the wind in order to present as narrow a surface as possible to the oncoming City of Flint."

While the respondent's exception to this answer must be sustained, I do not intend thereby to indicate that a proper answer requires a categorical yes or no to this interrogatory. The libellant's answer to the 7th interrogatory is stricken and the libellant directed to answer it anew, supplying, if so advised, as a substitute for the statement that a collision could not be avoided by any manoeuver on the part of the "City of Flint" and for a statement of the purpose of the "Lively Lady's" manoeuver, a statement as to the relative position of the ships when the "Lively Lady" ceased to hold her course and speed.

The further answers required of both the libellant and the respondent are to be filed in or within ten (10) days.